BRONSON LAW OFFICES PC      **HEARING DATE: February 11, 2015**
Proposed Counsel for the Debtor     **HEARING TIME: 10:00 a.m.**
480 Mamaroneck Avenue
Harrison, NY 10528
877-385-7793
H. Bruce Bronson, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In Re:

                                                                            Case No.  14-23559 (RDD)

    EMI'S AUTO CENTER, INC.,

                                                                            Chapter 11

        Debtor.


----------------------------------------------------------x


**DEBTOR' S MOTION  SEEKING ENTRY OF AN ORDER APPROVING: (1) SALE PROCEDURES; (2)  BIDDING PROCEDURES, (3)  BREAK-UP FEE, IF APPLICABLE, (4) THE FORM AND MANNER OF NOTICE, (5) THE SCHEDULE FOR AN AUCTION AND SALE HEARING; AND (6) AUTHORIZING THE SALE OF THE DEBTOR' S GAS AND AUTO REPAIR STATION AT 268 TARRYTOWN ROAD, WHITE PLAINS, NY  (the "Property"), FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, GRANTING THE SUCCESSFUL BIDDER GOOD FAITH STATUS, WAIVING THE FOURTEEN DAY STAY OF THE SALE ORDER, AND (7) GRANTING SUCH OTHER RELIEF AS PROPER.**

TO:    THE HONORABLE ROBERT D. DRAIN,
        UNITED STATES BANKRUPTCY JUDGE

      EMI'S AUTO CENTER, INC., the Debtor herein, by and through its counsel,

BRONSON LAW OFFICES, PC, makes this application pursuant to sections 105(a),

363(b), (f) and (m), 503, 507, 1146 (a) of title 11 of the United States Code, 11 U.S.C.

§§ 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer

Protection Act of 2005 (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9007

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules

2014-1 and 6004-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules") and Administrative Guideline Order GM-331 for the United States Bankruptcy Court for the Southern District of New York, for, *inter alia,* entry of a Sale Procedures Order (substantially in the form annexed hereto as **Exhibit A**) and the Bidding Procedures Order establishing sale and bidding procedures, annexed hereto as **Exhibit B** to govern the sale (the "Sale") of Debtor's gas and auto repair station located at 268 Tarrytown Road, White Plains, NY 10607 (the "Property").

In support of the relief sought, the Debtor respectfully represents:

## BACKGROUND

1. On November 9, 2014 (the "Filing Date"), the Debtor filed a voluntary petition under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

2. The Debtor has remained in possession of its business and management of the Property pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

3. No trustee or examiner has been appointed in this matter.

4. The Debtor owns the right to operate the gas and auto repair facility located at 268 Tarrytown Road, White Plains, NY 10607, having purchased such rights from Route 119 Gas, Inc. in April 2012, for $200,000.

5. The Debtor, in order to satisfy the requirements of LukOil North America, LLC ("LukOil"), lessor of the Property, is seeking to sell the Property. The Property has been actively marketed for sale since 2013, and has been considered by numerous potential purchasers. The Debtor has identified and entered into a purchase and sale agreement with an individual, Edward Blanco (or a limited liability company to be

2

formed for the purpose of holding title) (the "Purchaser" or "Stalking Horse Bidder") to purchase the Property (the "Purchase Agreement"), which is subject to higher and better offers. The Debtor also intends to enter into an agreement with a broker to market the Station, although, there is no guarantee that such an agreement can be negotiated between the respective parties or approved by the court prior to consummation of the proposed sale. No commission will be payable to any broker for the identified Purchaser.

6.   As a condition of the sale LukOil would be required to execute new documents with the Purchaser to allow him to lease the Property.

### THE PROSPECTIVE SALE

7.   The Debtor has entered into an agreement to sell the Station to the purchaser for $140,000 consisting of $90,000 in cash and a promissory note of $50,000 payable over twenty-five (25) months bearing interest at the rate of 6% per annum, to be guaranteed by Purchaser or Purchaser's principal, subject to clear title and this Court's approval. See Annexed **Exhibit C - Purchase Agreemen**t. A $14,000 deposit has been placed in counsel's IOLA account subject to the terms of the Purchase Agreement.

8.   The Purchase Agreement provides for a $15,000 break-up fee (the "Break-Up Fee") to be paid to the Purchaser as an administrative priority expense in the event that this Court orders a sale to a purchaser other than the Purchaser.

9.   The Purchase Agreement further provides that the Purchaser shall be entitled to reimbursement of all actual out-of-pocket costs incurred in Purchaser's conduct of Purchaser's negotiation for the Purchase Agreement, including reasonable attorney's fees

10.   The Purchase Agreement provides that the sale is subject to higher and better offers obtained at an auction of the Property. The Purchase Agreement also

3

provides the following: "If, pursuant to its orders, the Court agrees to consider or accept: (1) third party offers to purchase the Property on other than the terms expressly set forth herein; or (2) any higher offer that is less than TWENTY-THOUSAND DOLLARS ($20,000) more than the Purchase Price; or (3) the Court does not afford the Purchaser a reasonable opportunity to match such third party offer; or (4) the Court does not provide for the reimbursement of Buyer in the event of a third party purchase; then in any such event, the Agreement shall terminate and be immediately null, void and of no further effect upon release of the deposit to Purchaser, notwithstanding any approval of the Agreement by the Court."

      11.     The Purchase Agreement, including the Break-up Fee is appropriate because of the Purchaser's willingness to establish a minimum bid for other potential bidders which increases the chance that the Debtor will receive the highest and best offer for the Property and will further serve to encourage other bids on the Property.

### PROPOSED BIDDING PROCEDURES

      12.     Sale of the Property pursuant to the Purchase Agreement is subject to higher and better offers. In order to ensure that the highest and best price is received for the assets, the Debtor has established the proposed Bidding Procedures to govern the submission of competing bids at an Auction. Accordingly, the Debtor seeks this Court's approval of the Bidding Procedures set forth in an attachment to **Exhibit B** and incorporated herein in their entirety. It is submitted that the bidding procedures are fairly standard.

      13.     As part of the Bidding Procedures, the Debtor seeks approval of the Break-Up Fee in favor of the Purchaser in an amount of $15,000. The Break-Up Fee is payable only upon the closing of a transaction involving a sale of the Property by the

Debtor to a Successful Bidder, other than the Purchaser, that is higher and better than the terms and conditions of the Purchase Agreement, following an Auction in which the Purchaser is the Stalking Horse Bidder (an "Alternative Transaction"). The payment of the Break-Up Fee will constitute an allowed super-priority expense of the Debtor's estate, and will be paid from the sale proceeds of such Alternative Transaction.

14. In addition, the Bidding Procedures provide that bidders submit initial overbids in an amount not less than an amount equal to $20,000.

### MARKETING OF THE DEBTOR'S ASSETS

15. The Debtor's principals undertook marketing efforts after the Debtor's bankruptcy filing. The lack of extensive marketing is due to the fact that limited funding of the Debtor requires a quick sale to ensure that there will be proceeds for the Debtor's creditors, in addition to amounts owed to LukOil. While no broker has been engaged for the sale of the Property to date, there have been several interested parties and brokers have been consulted and made aware of the availability of the Property. The Debtor is currently negotiating with a potential broker; however, there is no assurance an arrangement can be reached. No commission will be paid upon a sale to the Purchaser.

16. The Debtor recognizes that other prospective purchasers may exist and the Debtor intends to provide notice of the sale to all parties who have expressed interest in the Property and to business brokers in the area that sell gas and auto repair stations like the Property.

## **THE BIDDING PROCEDURES ORDER**

**A. The Bidding Procedures and Stalking Horse Terms Will Maximize Value.**

17. The Purchase Agreement and Bidding Procedures are fair and are designed to maximize the value obtained by the bankruptcy estate and, ultimately to the Debtor's creditors.

18. Specifically, the Break-up Fee payable to the Stalking Horse Bidder of $15,000, exclusive of actual expenses, represents a relatively small fee for entering into the Stalking Horse Sales Agreement with limited due diligence and is expected to encourage bidding and set a floor on sales prices. Approval of break-up-fees and other bidding protections in Section 363 sales are an established practice in chapter 11 cases. *See Metaldyne*, No. 09-13412 (Bankr. S.D.N.Y. 2009) (approving breakup fee of 2% of the purchase price). While the Break-up fee's percentage of the potential sale may be significantly higher than in *Metaldyne*, it is a relatively small amount for the risk being taken.

19. In addition, the bidding procedures require certified funds totaling $25,000 from all prospective bidders and prohibit contingent bids. Further the initial bid must be $20,000 more than the Stalking Horse Bidders offer and thereafter each bid must be in increments of $10,000 from the previous bid. The Bidding Procedures and Purchase Agreement, in the Debtor's business judgment, provide an advantage to potential purchase bidders by establishing a floor price for the Property, while being appropriately priced to encourage bidding. In addition, the overbidding procedure encourages increased return to the estate and to creditors for third party bids, while not discouraging bids at auction. In the event there are Qualified Bidders and an Auction is held, the

Debtor will seek this Court's approval of the Sale of the Debtor's Assets free and clear of all liens, claims and encumbrances to the bidder that submits the highest and best offer.

**B.   Debtor's Sale Pursuant to Bankruptcy Code §363(b) and (f) is Appropriate.**

20.   Section 363(b) of the Bankruptcy Code provides, in pertinent part, that the Debtor "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate". 11 U.S.C. §363(b) (1).  As the Property constitutes the Debtor's major asset, the proposed sale is out of the ordinary course of the Debtor's business.

21.   Section 363 does not set forth an express standard for determining whether a sale of property under §363(b) should be approved.  Courts have interpreted this section using an "articulated business judgment" standard. *See*, *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989).

22.   The Court of Appeals for the Second Circuit first enunciated this standard by stating: "The rule we adopt requires that a judge determining a §363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such application." *Lionel*, 722 F.2d at 1070-71.

23.   Courts in this district have approved sales of a debtor's assets under §363(b) (1) of the Bankruptcy Code when (i) the sale is supported by the sound business judgment of the debtor's management; (ii) interested parties are provided with adequate and reasonable notice; (iii) the sale price is fair and reasonable; and (iv) the purchaser has acted in good faith. *See*, *e.g., In re Betty Owens Schools, Inc.*, WL 188127 at *4 (S.D.N.Y. 1997).

7

**C.     A Sound Business Justification Exists For the Sale of the Property.**

24.     Section 363(b) does not require that the Court substitute its business judgment for that of the Debtor.   Rather, the Court should ascertain whether a debtor has articulated a valid business justification for the proposed transaction. This is consistent with "the broad authority to operate the business of the Debtor . . . [which] indicates congressional intent to limit Court involvement in business decisions by a Trustee . . . [so that] a Court may not interfere with a reasonable business decision made in good faith by a Trustee". *In re Airlift Int'l, Inc*., 18 B.R. 787, 789 (Bankr. S.D. Fla. 1982).

25.     There is adequate business justification to sell the Property.  Based upon an analysis of the Debtor's ongoing and future business prospects, the Debtor believes that the sale of the Property, pursuant to the terms and conditions set forth herein, is in the best interests of the Debtor's estate and LukOil, the lessor of the Property. Accordingly, as set forth herein, the proposed Sale is supported by sound business reasons.

**D.     The Debtor Is Providing Adequate Notice of the Sale**

26.     In accordance with Bankruptcy Rule 6004, sales of property outside the ordinary course of business may be by private sale or public auction.  Fed. R. Bankr. P. 6004(f) (1).  Bankruptcy Rule 6004 further provides that "[n]otice of a proposed use, sale, or lease of property, other than cash collateral, not in the ordinary course of business shall be given pursuant to Rule 2003(a)(2), (c)(1), (i), and (k) and, if applicable, in accordance with §363(b)(2) of the Code." Fed. R. Bankr. P. 6004(a).  Pursuant to Bankruptcy Rule 2002(a) (2) this Bankruptcy Court may, for cause shown, shorten or direct another method of giving notice regarding the general twenty-one-day-by-mail period for the proposed use, sale, or lease of the estate's property outside the ordinary

8

course of business. Fed. R. Bankr. P. 2002(a)(2). Pursuant to Bankruptcy Rule 2002(c)(1), the notice of the proposed use, sale, or lease of property required under Bankruptcy Rule 2002(a)(2) must include the time and place of any public sale, the terms and conditions of any private sale, and the time fixed for filing objections. Fed. R. Bankr. P. 2002(c) (1). Moreover, the notice of a proposed use, sale, or lease of property is sufficient if it generally describes the property being sold.

27. The Debtor proposes to comply with the requirements of 2002(a) and (c) as to notification by serving via first class mail within three (3) business days of entry of the Bidding Procedures Order copies of: (i) Bidding Procedures Order, and (ii) Bidding Procedures, upon (a) the office of the U.S. Trustee, (b) all taxing authorities, (c) parties filing Notices of Appearance, (d) all creditors who have filed claims or which the Debtor has listed as unliquidated, non-contingent and undisputed, (e) the Purchaser's counsel and (f) all parties that have expressed an interest in the property to the Debtor or LukOil, provided LukOil provides the requisite information to the Debtor.

28. The proposed timing of the Sale Hearing is within the notice procedures mandated by the Bankruptcy Rules. Here, the form and manner of the notice and the procedures used for soliciting higher and better offers for the Property have been submitted for approval to this Court and will ensure that any and all interested parties will receive adequate notice of the Auction. Accordingly, the Debtor submits that the notices, procedures, and rules set forth in this Motion satisfy the notice requirements of the Bankruptcy Rules and section 363(b) of the Bankruptcy Code, constitute good and sufficient notice, and that no other or further notice is required.

**E.    The Property Will Be Sold for Fair Value**

29.    The Bidding Procedures contemplate that bids will be in cash, payable by a good faith deposit of $25,000 upon execution of the Purchase Agreement and the remaining balance due in cash or cash equivalent at closing (except that $50,000 may be by promissory note, guaranteed by a suitable party, payable in 25 monthly equal installments of principal bearing interest at the rate of 6% per annum, or such terms more favorable, subject to higher and better offers at the Auction. Following the Auction, the Debtor will seek this Court's approval of the Sale of the Debtor's Assets free and clear of all liens, claims and encumbrances to the bidder that submits the highest and best offer at the Auction (the "Successful Bidder").

30.    Courts will only approve section 363(b) sales if the sale obtains a fair and reasonable price for the assets. *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Indus.Valley Refrigeration and Air Conditioning Supplies, Inc.*, 77 B.R. 15, 20-22 (Bankr. E.D. Pa. 1987).

31.    At the Sale Hearing, the Debtor will demonstrate that the Successful Bidder bought the Property for "value."  Since the Sale of the Property will have been the subject of marketing and higher and better bids both before and at the Auction, the Debtor is confident that the Property's value will be maximized.

**F.    The Good Faith Buyer Requirement**

32.    All negotiations pursuant to the proposed auction procedures will be at arms' length, and the parties will have at all times acted in good faith. As set forth above, in the event that there are Qualified Bidders, the Debtor will select the highest and best offer.  In light of the marketing efforts, it is submitted that the open sale process pursuant

to the bidding procedures will ensure that the purchaser will be acquiring the Property in good faith.

### G.    The Property should be Sold Free and Clear of Encumbrances.

33.    In addition to seeking approval of the sale of the Property outside of the ordinary course of business, the Debtor seeks approval to sell the Property free and clear of any and all liens, claims or encumbrances in accordance with §363(f) of the Bankruptcy Code.

34.    A debtor-in-possession may sell property, pursuant to §§363(b)(1) of the Bankruptcy Code which provides, in pertinent part, that "[t]he trustee, after notice and a hearing may use, sell or lease, other than in the ordinary course of business, property of the estate." Section 363(f) of the Bankruptcy Code states as follows:

> (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if-
>
> (1)    applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>
> (2)    such entity consents;
>
> (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)    such interest is in bona fide dispute; or
>
> (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. §363(f).

35.    These factors are phrased in the disjunctive, meaning that only one of the Section 363(f) factors need be present.  The interests of LukOil while not a secured lender per se, are paramount.  It is anticipated that LukOil will not object to the sale in the manner and on the terms and conditions set forth in the Bidding Procedures; provided the successful bidder is qualified under LukOil standards and LukOil is made whole for post-

11

petition rent and other costs and expenses owed to LukOil by Debtor pursuant to the terms of the Agreements entered into by and between LukOil and Debtor. Further the proceeds of the sale will be available to the Debtor's creditors to satisfy in whole or part their claims pursuant to a disclosure statement and plan; and accordingly the sale of the Property results in the best opportunity for LukOil and the Debtor's creditors to be compensated.

36.    Accordingly, the proposed sale meets the requirements of sections 363(b) and (f) of the Bankruptcy Code and the Debtor should be permitted to sell the Property free and clear of all liens and encumbrances.

**H. Waiver of the Fourteen Day Stay Under Bankruptcy Rule 6004(h)**

37.    Pursuant to Bankruptcy Rule 6004(h), unless the court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen days after entry of such order, "unless the court orders otherwise." See Fed. R. Bankr. P. 6004(h).

38.    Waiving the fourteen day stay under Bankruptcy Rule 6004(h) is necessary to permit the Debtor to minimize costs by closing the proposed transaction as soon as possible after the entry of the Sale Order.

I. **Waiver of Memorandum of Law**

39. The Debtor respectfully requests waiver of submission of a separate memorandum of law in connection with this Motion, in that there are no novel or difficult legal issues presented herein.

**J. No Prior Requests**

40. No prior Motion for the relief requested herein has been made to this or any other Court.

41. For all of the foregoing reasons, the Debtor respectfully requests entry of the Bidding Procedures Order, substantially in the form annexed hereto as **Exhibit B**, and after the Auction and Sale Hearing, entry of the Sale Procedures Order annexed hereto as **Exhibit A**.

**WHEREFORE**, the Debtor respectfully requests entry of the Bidding Procedures Order and, subsequently, the Sale Procedures Order; and grant such other and further relief as this Court deems just and proper.

Dated: Harrison, NY
       January 26, 2015                    Bronson Law Offices, P.C.

                                                    By: /s/H. Bruce Bronson
                                                    H. Bruce Bronson, Esq.
                                                    480 Mamaroneck Avenue
                                                    Harrison, NY 10528
                                                    Ph: 877-385-7793
                                                    Fax: 888-908-6906